**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Darren D. Boyer, Jr., *et al.*,** | : | |
| | : | **Case No. 2:25-cv-00510** |
| **Plaintiffs,** | : | |
| **v.** | : | **Judge Graham** |
| | : | |
| **First American Title Insurance Company,** | : | **Magistrate Judge Shimeall** |
| | : | |
| **Defendant(s).** | : | |

**<u>OPINION & ORDER</u>**

This matter is before the Court upon the Defendant's motion for summary judgment. Doc. 29. Plaintiffs, Darren and Marissa Boyer ("Plaintiffs"), brought this action, *pro se*, against Defendant First American Title Insurance Company ("Defendant") raising various claims related to the Plaintiffs' purchase of real property in August of 2024. For the reasons that follow, the Court **GRANTS** Defendant's motion as to Counts I-VI in the Amended Complaint.

**Background**

On August 17, 2024, Plaintiffs were the successful bidders at auction for the purchase of 437 Poplar Street (the "Property"), identified in property records as Lot 179 with Parcel Number ("PN") 16-000297-000 in Junction City, Ohio. Defendant served as the title insurer and closing agent. Plaintiffs signed closing documents on August 29, and the sellers signed the following day, completing the transaction by August 30.

Sometime after closing, Plaintiffs "discovered" that a strip of land measuring 9ft-by-183ft (the "9-Foot Strip") "had been excluded from their deed and not disclosed in Schedule B of the title insurance policy." Doc. 10, # 170. The 9-Foot Strip was originally part of a strip of property known as "vacated Mill Street," situated between Lot 179 and Lot 180. Doc. 29-2, # 1215. Believing that the omission of the 9-Foot Strip "created a material title defect," (doc. 10, # 170) Plaintiffs made insurance claims under the Owner's Policy of Title Insurance (the "Title Policy") and the Closing Protection Letter ("CPL"), each issued by Defendant. Both claims were denied in April 2025.

Plaintiffs then initiated this action in the Perry County Court of Common Pleas. Defendant removed the action to this Court. In the Amended Complaint, Plaintiffs raise six (6) claims:

Count I: Breach of Closing Protection Letter

Count II: Breach of Title Insurance Policy

Count III: Bad Faith Denial of Coverage

Count IV: Negligent Misrepresentation

Count V: Fraud by Omission

Count VI: Violation of Ohio Insurance Law

*See generally, id.* Defendant has moved for summary judgment on all claims, arguing, *inter alia*, that neither the CPL nor the Title Policy were breached, that no bad faith denial claim exists where denial was proper, and that Plaintiffs' claims for negligent misrepresentation and fraud by omission are barred by the terms of the Title Policy.

*See generally,* doc. 29. That motion has been fully briefed and is now ripe before the Court.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence"

to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## DISCUSSION

The Court addresses Defendant's arguments as to each count of the amended complaint below. But the Title Policy and the related CPL, and whether Defendant breached them, is the center of gravity in this dispute, and so the Court starts there. For the reasons explained below, resolution of this issue is simple upon the undisputed facts before the Court.

**I. Defendant Did Not Breach the Title Policy.**

At the top of the first page of the Title Policy, the transaction data identifies the property address as "437 Poplar Street, Junction City, OH." Doc. 17, # 336. But it specifically states that "the Company [(i.e., Defendant First American Title Insurance Company)] assumes no liability" for the content of that identification data. *Id.*

The Policy states that in Schedule A the land for which the title is insured is defined in attached Exhibit A, which defines the land as "Being Lot 179 in Edminston's Addition to the Village of Junction City, Ohio, as shown on the Plat thereof recorded in Volume 2, Page 71, Plat Records, Perry County Ohio." *Id.* at # 339. This description does *not* include a 9-Foot Strip of property adjacent to Lot 179, as the 9-foot strip comprises a portion of a separate parcel referred to as "vacated Mill Street." Plaintiffs mistakenly believed, however, that the 9-Foot Strip was part of the Property they were purchasing. But interest in the 9-Foot Strip was not covered by the Title Policy. Therefore, Plaintiffs have no claim for breach of the Title Policy against Defendant.

Relatedly, under the CPL, Defendant agreed to cover "actual loss incurred… in connection with the Closing" that was to be conducted by their agent. Doc. 29-1, # 934. For the purposes of the CPL, "loss" includes that which arises from "failure… to properly handle and disburse [Plaintiffs'] funds or documents in connection with the closing." *Id.* Covered "loss" may also arise from "failure of the licensed agent… to comply with any applicable written closing instructions… to the extent that they relate to… the status of the title to said interest in land or the marketability thereof

**as insured**." *Id.* at # 935 (emphasis supplied). *Id.* Thus, the scope of coverage under the CPL is limited to the property interest insured under the Title Policy, which does not include the 9-Foot Strip. Therefore, Plaintiffs' have no claim for breach of the CPL against Defendant.

Importantly, the sellers of the Property, Douglas and Pamela Decot (the "Decots"), did not hold recorded title to the 9-Foot Strip nor any part of vacated Mill Street—in fact, the record shows that the 1993 deed granting Lot 179 to the Decots (the "1993 Deed") specifically struck a reference to vacated Mill Street, limiting the conveyance solely to Lot 179. *See* Doc. 29-1, # 946. Though the Property was auctioned, the Plaintiffs and Decots nevertheless entered a Purchase Agreement following the auction, which provided that the Property was sold "AS-IS WHERE-IS."[1] *Id.* at # 893. So, because the Decots did not own the 9-Foot Strip, they could not convey it to Plaintiffs. Because the 9-Foot Strip was therefore not included in the transaction, it was not covered by the Title Policy and CPL. Plaintiffs' arguments to the contrary are unavailing.

*i. No Genuine Disputes of Material Fact Regarding Coverage Under the Title Policy.*

Plaintiffs argue that questions of fact preclude summary judgment on their claims for breach. In particular, they point to statements from Wendy Miller

[1] In Plaintiffs' related state-court action against the real estate broker representing the Decots in the transaction, the "AS-IS WHERE-IS" language strongly informed the trial court's grant of judgment on the pleadings in favor of the defendants, consistent with the reasoning herein—i.e., because the Property as described did not include the 9-Foot Strip. *See Boyer v. Poorman*, 5th Dist., Case No. 26-CA-00001, ¶ 18; *see also Moreland v. Ksiazek*, 2004-Ohio-2974, ¶ 57 ("as long as a seller does not engage in fraud, these two principles, caveat emptor and the "as is" clause, bar any claims brought by a buyer.").

("Miller"), an escrow officer employed by Defendant, and Michael Potter ("Potter"), a title abstractor contracted by Defendant. In an email to Perry County in March 2025 (shortly after the Plaintiffs discovered that they did not hold title to the 9-Foot Strip), Miller stated that "the [Plaintiffs] believe they own [the 9-Foot Strip] and I agree with them." Doc. 10-1, # 192. But Defendants are correct to point out that Miller was not administering the claim under the Title Policy, and that she made that statement with incomplete information. Doc. 29, # 794. In short, Miller does not speak for First American, and her opinion does not change the recorded chain of title.

Potter was contracted by Defendant to conduct a title search in anticipation of the Property being auctioned. During this process, Potter discovered that the County had an incorrect street address and PN assigned to Lot 179. These issues were corrected a month before the auction, and while Plaintiffs point to these changes as evidence of Defendant's malfeasance, they do not appear to have affected the sale of the Property in any material way.[2] As noted above, the purchase agreement accurately reflected the parcel number for the Property the Plaintiffs were buying.

Plaintiffs also point to an email from Potter to Miller in which the former refers to a "title cloud," regarding the chain of title of the 9-Foot Strip. Doc. 32, # 1546. But, in context, his opinion that there is a "title cloud" appears to be based on a hypothetical assumption:

[2] Defendant has submitted images of the erroneous and corrected maps in support of their motion. *See* doc. 29, # 787-88. Though the maps are "approximate" and "for reference only," the corrections caused no apparent change in the boundaries of Lot 179. *Id.* The most conspicuous change is that the Property address changed from 439 to 437 Poplar St., but Plaintiffs have not explained how any of these changes amounted to an effort to conceal a defect, as they allege.

> **I would assume** the current property owners of adjoining lots would hold title to the vacated streets. The property FKA Mill St is adjoining to the subject lot transferred. **But as nothing on record states that, therefore, I cannot state that as fact.** The deed chain reported should also be the chain of title of the vacated street. However, this is a title cloud as **the vacated street description was never actually transferred** to anyone except those previously mentioned.

*Id.* (emphasis supplied). Like Miller's opinion, Potter's assumption does not change the chain of title, as he acknowledges in his email. And, for the purposes of Plaintiffs' assertion that coverage was wrongfully denied, the chain of title is what matters. To put it one way, with no record of the Decots holding title to the 9-Foot Strip—which is indisputably a parcel separate and distinct from Lot 179—the deed would be defective if it *included* the 9-Foot Strip.

Because Plaintiffs' claim for breach of the Title Policy relies entirely on their theory of defective title, and because the Court finds that theory unpersuasive for the reasons set forth above, the Court will grant Defendant's motion as to Count II of the Amended Complaint.

*ii. No Genuine Disputes of Material Fact Regarding Coverage Under the CPL.*

Plaintiffs' alternative theories regarding CPL coverage are similarly deficient. First, Plaintiffs assert that "there is a factual dispute as to whether Defendant's agent mishandled documents affecting title," citing a statement from Potter which described the 1993 Deed with the stricken reference to vacated Mill Street. Doc. 32, # 1487. Plaintiffs' briefing appears to confuse the 1993 Deed with the deed they received, and there is no allegation or evidence that any documents were mishandled

with regard to their purchase of the Property. *See also* doc. 29-1, # 935 ("The scope and effect of this [CPL] is limited to a single transaction, which is the Closing on the commitment or binder referenced in the caption.").

Second, Plaintiffs allege that, on the day they signed the closing documents, they "emailed the e-signing team with questions, and that message was forwarded internally to [Miller], who never responded." *Id.* In support, they cite to an email sent by Plaintiff Darren Boyer which states, in its entirety:

> Morning,
>
> The document has been signed however I believe there are other steps required in the closing process. Please let us know what is needed.
>
> Best,
> Darren Boyer

*Id.* at # 1548. The lack of response from Miller to this email (which does not contain any questions) does not create a claim under the CPC.

Third, Plaintiffs alleged that Defendant "appended Plaintiffs' DocuSign signature to a set of Purchase / Sale Settlement Instructions that Plaintiffs never reviewed or signed." *Id.* at # 1487. They cite a copy of the Purchase/Sale Settlement Instructions included with their briefing which bears their signatures. *Id.* They offer no evidence of tampering but nevertheless contend that "whether those instructions were tampered with is a factual conflict that cannot be resolved on summary judgment." *Id.* There is no evidence from which a reasonable jury could find that the signatures were appended by anyone but the Plaintiffs.

Fourth, Plaintiffs allege that Defendant "attempts to shield itself behind the phrase 'closing instructions,' yet the [CPC] does not define that term." *Id.* It is unclear to the Court how Defendant used the term "closing instructions" to avoid coverage under the CPC, and Plaintiffs do not provide what they believe the proper definition of "closing instructions" should be nor any explanation for how their claim would turn on a different meaning.

Plaintiffs also allege that they "had no live communication" with any agent of Defendant during the closing, "raising further questions about mishandling of documents and closing procedures." *Id.* at # 1488. And they assert that issuance of the CPC seven months after closing "creates additional factual questions." *Id.* But Plaintiffs must do more to identify a genuine dispute of material fact than simply hypothesize about undiscovered possibilities. Because Plaintiffs have not identified genuine, material factual disputes regarding coverage under the CPC, Defendant is entitled to summary judgment on this claim.

Furthermore, because a Bad Faith Denial of Coverage claim cannot prevail when coverage was properly denied, and because the Court finds that coverage was properly denied as to both the Title Policy and the CPL, Defendant is entitled to summary judgment on Count III of the Amended Complaint.

**II. Plaintiffs' Tort Claims Are Barred by the Terms of the Title Policy.**

Plaintiffs raise claims for Negligent Misrepresentation (Count IV) and Fraud by Omission (Count V). However, the Title Policy expressly states,

> All claims asserted under this policy are based in contract and are restricted to the terms and provisions of this policy.

> [Defendant] is not liable for any claim alleging negligence or negligent misrepresentation arising from or in connection with this policy or the determination of the insurability of Title.

Doc. 29-1, # 924.[3] The Ohio Supreme Court has recognized such language as valid and enforceable in the context of a title insurance policy. *See Chicago Title Ins. Co. v. Huntington Natl. Bank*, 1999-Ohio-62, 87 Ohio St. 3d 270, 277 (holding negligence claim fails where policy "restricts any claim of loss or damage, including negligence claims, to the policy provisions" and "the policy language explicitly precludes an independent tort action").

Plaintiffs have not responded to this argument, nor have they raised any other argument that could overcome the express language of the Title Policy, or which has not already been addressed. Regardless of the Title Policy language barring these claims, Plaintiffs have not identified any evidence in the record from which a reasonable jury could find that Defendant or any of its agents committed fraud by omission or negligent misrepresentation. Defendants are entitled to summary judgment on Plaintiffs' tort claims in Count IV and Count V of the Amended Complaint.

**III. Plaintiffs' Claim for Violation of Ohio Insurance Law Fails for the Same Reasons.**

Plaintiffs have asserted a claim for Violation of Ohio Insurance Law, citing Section 3953.07 of the Ohio Revised Code.[4] That section states that "No policy or

---

[3] It also contains a merger clause: "This policy together with all endorsements, if any, issued by [Defendant] is the entire policy and contract between the [Plaintiffs] and [Defendant]." Doc. 29-1, # 925.

[4] Plaintiffs also cited Section 3953.32 but have since abandoned that theory.

contract of title insurance shall be written unless it is based upon a reasonable examination of the title." O.R.C. § 3953.07. Ohio courts have recognized that while the law "demands that the title insurer make a reasonable examination, it does not specify what act is considered to be a reasonable examination." *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta*, 2002-Ohio-1540, ¶ 44.

Defendants argue that summary judgment is warranted because Plaintiffs' claim is based entirely on the same flawed theory they assert for coverage under the Title Policy. Doc. 29, # 807-08. Indeed, in their Amended Complaint, Plaintiffs assert that Defendant violated § 3953.07 "by issuing a title insurance policy that failed to disclose or insure a known 9-foot-wide vacated alley adjacent to the insured parcel." Doc. 10, # 183. But, as discussed above, Defendant disclosed the 1993 Deed as well as the legal description of the Property, which did not include any part of vacated Mill Street, including the 9-Foot Strip.

Plaintiffs next assert that Miller "admitted in a March 18, 2025 email that this strip had been part of the deed but was removed before recording." *Id.* Again, this confuses the 1993 Deed (with the stricken description of vacated Mill Street) with the deed the Plaintiffs received. There is no evidence that the 9-Foot Strip was ever part of the sale, and the evidence showing that the Decots never held title to the 9-Foot Strip means that it could not have been part of the sale.

Finally, Plaintiffs assert that Potter "acknowledged that the strip constituted a 'title cloud' and that an easement affecting the area was not disclosed." *Id.* As discussed above, Potter's reference to a 'title cloud' is based on the title to vacated

Mill Street never being conveyed to the previous owners of Lot 179, contrary to Potter's assumption about how the chain of title should appear. Again, Potter's assumption about how the vacated Mill Street parcel should have been conveyed does not change the recorded chain of title, as he acknowledges. *See* doc. 32, # 1546 ("I would assume the current property owners of adjoining lots would hold title to the vacated streets… but as nothing on record states that, therefore, I cannot state that as fact.").

Because Plaintiffs' claim for Violation of Ohio Insurance Law is clearly based on the same theories that this Court has already rejected, summary judgment is warranted for Defendant on this claim.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment on all counts of the Amended Complaint. Accordingly, Plaintiffs' motion to compel (doc. 20) is **DENIED as moot**.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: October 9, 2026